Prairie Center Oil Development Company v. Commissioner.
Prairie Center Oil Dev. Co. v. Commissioner
Docket No. 66180.
United States Tax Court
T.C. Memo 1958-177; 1958 Tax Ct. Memo LEXIS 47; 17 T.C.M. (CCH) 880; T.C.M. (RIA) 58177; 9 Oil & Gas Rep. 584; September 25, 1958
*47 Melvin Dinner, Esq., for the petitioner. William H. Welch, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $19,214.67 in the petitioner's income tax for the fiscal year ending February 28, 1953. The primary issue for decision is whether $45,941.60 received from the assignment of oil and gas leases, $45,426.10 of which was distributed to its shareholders in 1952, should be taxed as income to the petitioner. Findings of Fact The petitioner, a Colorado corporation, filed its corporate income tax return for the taxable year with the director of internal revenue at Denver, Colorado. It used an accrual method of accounting. The petitioner was organized in November 1951 by a group of neighboring farmers interested in consolidating their separate land holdings into one large unit which could be leased to an oil company for drilling purposes. The landowners agreed, at organizational meetings held prior to the petitioner's formation, that each would receive the full amount received for the leases and delay rental, attributable to his property. No offsetting expenses were anticipated. It was also *48 agreed that an arrangement should be made whereby all the landowners would have a share in the profits of a producing well drilled anywhere on the consolidated block of land in proportion to the acreage each one had contributed. The participating landowners bound themselves, in a written agreement executed on October 30, 1951, to lease their individual properties for a period of 5 years to the petitioner when it was formed. One share of the petitioner's stock was to be issued on the basis of each leased acre. The petitioner's articles of incorporation were adopted by the participating landowners on November 13, 1951. The purpose of the petitioner was stated to be: "* * * promoting the development of drilling of oil and gas wells on the lands of its members, and generally by cooperatives leasing, contracting, and marketing to increase the income and profit and other consideration to the members of the corporation * * *; provided that any money, overriding royalty or other consideration received by the corporation for the assignment or sale of oil and gas leases is to accrue to the members of the corporation, and that the corporation is not to engage in any business or profit to *49 itself." Any amount received by the petitioner from the sale or assignment of leases was to be distributed immediately to the shareholders in proportion to the acreage leased by each. Each participating family unit received 2 shares of voting stock on the basis of the first 2 leased acres, and 1 share of nonvoting stock for every additional leased acre. The issued stock was transferable and assignable only if the oil, gas and mineral rights owned by the shareholder were conveyed or assigned with the stock. The 5-year leases given to the petitioner were executed pursuant to a standard form which, among other things, reserved a oneeighth royalty to the lessor on sales resulting from a producing well drilled on the lessor's individual property. However, each landowner also executed a deed giving the petitioner an undivided one-half interest in the reserved one-eighth royalty, thereby conveying to the petitioner a one-sixteenth interest in any oil and gas production on the leased property. The petitioner offered the leases to various oil companies and finally granted James H. Snowden, in a written agreement executed on March 17, 1952, the exclusive right to explore the acreage *50 for oil and gas possibilities upon payment of $2.50 per acre, and an option to purchase the leases at any time prior to October 2, 1952, if he paid an additional $2.50 per acre and drilled a test well by November 1, 1952. This arrangement was made subject to an agreement executed on the same date giving David J. Miller, a local attorney, and William D. Woodard an overriding royalty of 2 1/2 per cent of any oil and gas produced from the leased properties, in order to compensate them for their efforts in incorporating the petitioner. Snowden demanded a title certificate and provision had to be made for this unanticipated expense. Snowden made the initial payment of $2.50 per acre for the exploration rights in April 1952, and on the same day the petitioner distributed substantially all of that amount, to its shareholders. Snowden exercised his option to acquire the leases and made the requisite additional payment of $2.50 per acre in October 1952, and the petitioner immediately distributed substantially all of that amount, to its shareholders. The petitioner then assigned its rights to the leases to Snowden and to H. P. Macauley. The petitioner received a total of $45,941.60, or $5 *51 per acre for 9188.32 acres, and distributed this amount, less $515.50 withheld for expenses, to its shareholders. Some delay rentals were paid by Snowden and Macauley directly to landowners. The drilling operations on the lands covered by the oil and gas leases were unsuccessful and the petitioner never received any further funds from any source, though it is still in existence. All of the oil and gas leases have now expired. The petitioner, on its income tax return for the fiscal year ending February 28, 1953, reported $45,941.60 as income from royalties. It deducted $32,918.12 as patronage dividends, $12,633.94 for depletion, and $389.54 for legal and accounting fees, thereby reporting no taxable income. The Commissioner, in his notice of deficiency, determined that the amount of $45,941.60 constituted ordinary income to the petitioner in the taxable year and disallowed the dividends and depletion deductions. All stipulated facts are incorporated herein by this reference. Opinion MURDOCK, Judge: The petitioner reported the $45,941.60 as income and the Commissioner made no change in that item in determining the deficiency, but his whole defense here is based upon his disregard *52 of the fact that any amounts received by the petitioner for the assignment of the leases were not to belong to it but were to belong to the individual landowners. He refuses to believe the abundant uncontradicted testimony of the several witnesses that none of the landowners would have leased their land except with the definite understanding that each was to be entitled to have as his own whatever amount might be received by the petitioner for assigning the leases and that such payments would not belong to the petitioner. The landowners had at least two purposes in forming the petitioner. One was to provide a means for distributing a part of the proceeds of any production among all participating lessors and to carry out that purpose they transferred to the petitioner one-half of their reserved one-eighth interest. Another purpose was to commit sufficient acreage to the project to attract an operator and to obtain a "bonus" or payment for assigning the leases to such a person. All participants agreed, however, that any such bonus payments, when received, would belong to the individual landowner lessors and not to the petitioner. That agreement was carried out, except that they later *53 agreed that a small amount should be withheld by the petitioner to pay some unanticipated expenses, particularly the cost of title certificates. Since the payments did not belong to the petitioner, it was error to include them in its taxable income. Cf. ; All . Alternative contentions of the petitioner need not be considered. Decision will be entered for the petitioner.